Appendix A

*United States Courts*
*Southern District of Texas*
*FILED*

MAY 24 2010

*David J. Bradley, Clerk of Court*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## _____ DIVISION

Jose Ramiro Meza §
§
versus §     CIVIL ACTION NO. _____
§
Bay Ltd §     **2:10cv164**
1414 Corn Products Road §
Corpus Christi, TX 78469 §

## EMPLOYMENT DISCRIMINATION COMPLAINT

1. This action is brought under Title VII of the Civil Rights act of 1964 for employment discrimination. Jurisdiction is conferred by Title 42 United States Code, Section §2000e-5.

2. The plaintiff is: Jose Ramiro Meza

   Address: 4530 Odem Drive

   Corpus Christi, TX 78415

   County of Residence: Nueces

3. The defendant is: Bay Ltd

   Address: 1414 Corn Product Rd.

   Corpus Christi, TX 78469

☐  Check here if there are additional defendants. List them on a separate sheet of paper with their complete addresses.

4. The plaintiff has attached to this complaint a copy of the charges filed on *8-2-2007* - *10-1-2007* with the Equal Employment Opportunity Commission.

5. On the date of *2-23-10*, the plaintiff received a Notice of Right to Sue letter issued by the Equal Employment Opportunity Commission; a copy is attached.

6. Because of the plaintiff's:

   (a) ☒ race

   (b) ☐ color

   (c) ☒ sex

   (d) ☐ religion

   (e) ☒ national origin,

   the defendant has:

   (a) ☒ failed to employ the plaintiff

   (b) ☒ terminated the plaintiff's employment

   (c) ☒ failed to promote the plaintiff

   (d) ☒ other: *Also Fired Because I Was a Member of TX Army Nat'l Guard fixing to be Deployed to Afganistan.*

7. When and how the defendant has discriminated against the plaintiff:

*Employer thru use of Supervisor's + Employee's (White) Planted False Evidence Such as being Involved in Bus Accident of Employee's Vehicle, Planted Child + Adult Pornography in my Working Area, + also use a Female Employee to Accuse me of Threaten + Making Terrorist Threat to 3 White Employees to get me Fired.*

8. The plaintiff requests that the defendant be ordered:

*to payed me Back Wages suffered since Sept 2007-Present - Remove bias of getting hire in Port + Refinery's in Nueces County + Reinstated me Back with Company Due to being falsely Accused of being a Terrorist.*

(a) ☒ to stop discriminating against the plaintiff

(b) ☒ to employ the plaintiff

(c) ☒ to re-employ the plaintiff

(d) ☒ to promote the plaintiff

(e) ☒ to _Stop Discriminating because I am a member of Tx Army Nat'l Guard & Army Reserve Forces_ and that;

(f) ☒ the Court grant other relief, including injunctions, damages, costs and attorney's fees.

_Jose Ramirez Meza_
(Signature of Plaintiff)

Address: _4530 Odem Drive_
_Corpus Christi, Tx 78415_

Telephone: _361-816-7675_ Cell
_361-857-0551_ H.

*Respondent*
*Charge # 360-2008-00002 — OAYLH0*

| EEOC AFFIDAVIT | | |
|---|---|---|
| *(This form is affected by the Privacy Act of 1974. See Privacy Act Statement on reverse before completing this form.)* | | |
| NAME: Ramiro J. Meza | TELEPHONE NUMBER (Give area code) HOME: (361) 857-0051 | WORK: |
| ADDRESS (Number, street, city, state, zip) 4530 Odem Dr., Corpus Christi, TX 78415 | | |
| THE FOLLOWING PERSON CAN ALWAYS CONTACT ME | | |
| NAME AND TELEPHONE NUMBER | | |
| ADDRESS (Number, street, city, state, zip) | | |
| STATUS OF EMPLOYMENT | | |
| CHECK ONE: [ ] WORKING  [X] NOT WORKING  [ ] SOUGHT EMPLOYMENT AT | NAME OF EMPLOYER Bay, Ltd. | |
| TYPE OF BUSINESS Refinery contractor | DATES OF EMPLOYMENT  FROM: 8/2/07  TO: 10/1/07 WHEN EMPLOYMENT WAS SOUGHT  FROM  TO: | |
| POSITION TITLE Bus Driver | DEPARTMENT | |
| ADDRESS (Number, street, city, state, zip) 1414 Corn Products Road, Corpus Christi, TX  78409 | | |

EEOC Form 133 (10/94)

*I declare under the penalty of perjury that the foregoing is true and correct.*

## SECOND AMENDMENT TO ORIGINAL AFFIDAVIT (2nd Amended items in Italics)

On or about August 2, 2007, I was hired for the position of bus driver by Keith Dynham, by *My employer was is Bay Ltd.,* 1414 Corn Products Road, Corpus Christi, TX  78409, 361-289-2400.  I live at 4530 Odem Dr., Corpus Christi, Texas 78415, (361) 857-0551. My rate of pay was $17.50 per hour at the time of my termination.  I did not accrue benefits.

On or about August 2, 2007, I was hired for the position of bus driver by representatives in Human Resources. On my second day of work, I was informed by Keith Dynahm, (white), he "had not hired me as a bus driver, he had hired me as a HMC (handyman of all craft). Because of his last minute decision, I was given a pay reduction from $17.50 per hour as a bus driver to $14.00 per hour as a HMC. I worked in the position of HMC for approximately 1 ½ months.

On or about August 6, 2007, I became aware that the bus driver position that I had been hired for, and was subsequently removed from, was instead given to Angelia (LNU), a white applicant.

On or around mid September, one of the bus drivers was terminated.  I was told by Keith that he was going to put me as a driver 'because he had just gotten rid of another Mexican'.  I was given a split shift, working from 5:30 – 9:30 a.m. and the 4:00 – 8:00 p.m.  When I returned the bus to the yard from my shifts, it was always parked in the yard with camera surveillance and security guards.

On or about September 25, 2007, I ended my morning shift at 9:30 and parked my vehicle in the bus yard. I returned to the yard at 4:00 for my second shift. While parked at Gate #40, Keith came up the bus and told me he wanted to talk to me at the truck stop. He said that he 'understood' that I had been involved in an accident. I wasn't aware of what he was talking about, but I arranged to meet him at a truck stop at Navigation and Up River Road. When I arrived at the truck stop, I was met by Keith Dynahm, Randy (LNU), (white), who is the head of Security, and an older man who is one of the Vice Presidents of Bay Ltd. (white) (name unknown).  Additionally the Head of Safety (name unknown) (White) was also present.  It is my understanding that initially, this person told Keith that I was in an accident, but when I asked him at the truck stop what was

Page 1 of 4

going on, he responded that he didn't know anything about any accident. Randy went in the bus, and when he came out, he was holding a pornographic magazine which he had pulled out from a compartment in the front of the bus. Randy told me that they had a report that I had been showing the magazine to several ladies. I told Keith and Randy that the magazine was not mine; I had shown no such thing to anyone. I told them it must have been put there by someone, and told them to check the security cameras, and also told them that they would not find any prints belonging to me on the magazine. Keith even made the comment at the time "How did Randy know exactly where to find the magazine." At that point, I returned to work.

Later that afternoon, I went and spoke with the security guard (Name unknown) and asked him to check the surveillance camera of the bus. I was informed that he had only seen three people around the bus, Spencer (LNU), (white), Griffin (LNU), (white), Lolly (LNU) (Hispanic).

At about 5:30 p.m., Keith Dynahm and Shannon Green (white) came into the bus and said that I needed some time off and told me to take a couple of days off. It was not a write up or a disciplinary measure. From the date that I was hired, I have not received any verbal warnings, write ups or disciplinary actions.

On or about September 28, 2007, I went back to talk to Keith about when I could return to work. Keith was very gruff and off putting and told me that I needed to leave, that he didn't have time to talk to me and I needed to talk to Randy. I then proceeded to try and locate Randy but determined he was not available.

On or about October 1, 2007, I again went back to speak with Randy to find out when I could return to work. I was told by Randy that I was terminated as of that day. I was given no reason for the termination. When I requested to go speak with Human Resources, I was told that I needed to get off of the property immediately and if I did not, he would call the Police to have me physically removed.

I believe that I have been discriminated against because of my National Origin (Hispanic). I believe that one of the white employees placed the magazine on my bus in an act to get me fired. I have also been subjected to racial comments such as comments made by Spencer indicating that "Only good Mexicans are dead Mexicans. *I was exposed to a hostile work environment and racial harassment at the work place when co workers and supervisors did the following actions: Spencer and Griffin would bragged about when they were kids they would do racially discriminatory actions such as put pictures of nooses in locker rooms where black students were present, use of the words "nigger" and Mescan", and making comments such as Mexicans always eat with their hands. Additionally, Griffin would talk about his political viewpoint regarding segregation and the rights of people to be separatists, and that he didn't believe the federal government should regulate the schools regarding integration of black in the school systems. He would also brag that he knew people who belonged to the Arian Nation. Spencer would speak about not liking the Mexican Nationals coming to American to work for cheap wages, saying that they shouldn't be allowed to take the jobs away from Americans. In another incident, Rodeo would check the lunch boxes of all employees as they came off site, presumably to check for stolen items. On one occasions, he initiated a confrontation with a group of black employees, following them to my bus, and confronted them with hostile, intimating language such as "nigger", "fuck you", "what they is wrong with you". The black employee became equally upset, and Rodeo told him he was going to get Shane Green. When Mr. Green returned with Rodeo, he asked who was causing the issue. One black employee spoke up, and Shane indicated that he would discuss the matter with him the following day. At this same time, I indicated that I had a schedule to run and I didn't have time for this type of argument on my bus, and asked if I could proceed with my route. In a conversation I had with Angela at a later date, I mentioned that Rodeo should be more careful in how he treats employees, mentioning that incident. Angela told me that 'well, where they are from, black's are known for stealing'. She further said that she would never hire a black if she had her own company.*

*Around the first part of September, there was another incident in which Spencer refused to pick up black employees in the employee parking lot to transport to the job site. I was following in my bus, and collected the employees for transport. The employees were angry and I told them they needed to make a complaint. Later that day, I spoke with Keith Dynahm, reporting a prohibited employment practice involving Spencer's discriminatory treatment of the black employees. To the best of my knowledge, nothing was done to address the situation. In a conversation with Spencer later on, he told me that he didn't like blacks.*

Page 2 of 4

AMENDMENT:

When I was hired for the position of bus driver, I was told by Pato, Foreman for Hydro Boiler Makers, that I wouldn't work there (bus driver) for long because Rodeo (LNU) (White, male), General Superintendent, had told Pato that Rodeo's wife would be the next driver; they were going to get rid of the lazy Mexican who was talking bad about the buses. It was my understanding the comment of lazy Mexican was referring to me. On my third day driving bus, Griffin told me that Keith didn't want me driving a bus and he told me to report to Keith Denham, who placed me with Richard (LNU), a General Foreman and another foreman. When I asked why I was being moved, they told me Griffin had said I was talking bad about the bus. Three or four days after I was removed as a bus driver, I was replaced by Angela (LNU), (White, female). This is consistent with what Pato had told me. In addition, I was not compensated at the bus driver's rate of $17.50 per hour for the 2-3 days I drove bus prior to my transfer. Instead, I was paid a lesser pay of $14.00 which is the pay rate for HMC (Handyman – Multi-Craft). *Additionally, on my first check, I was not paid at the bus driver's rate of $17.50 for the 2-3 days in which I did drive bus. Instead, my pay check reflected the lower rate of $14.00 for all hours worked.*

In mid September, when I was again moved to the position of bus driver, I was told to use Angela's bus, as there were only two good buses available, Angela's and Griffin's. Almost immediately, Angela began verbally abusing me, yelling at me, cussing at me, using racial slurs, offensive names and comments in reference to myself and other non-white workers. These offensive comments were also made by Griffin, Stewart, Rodeo and others. These included names such as 'greaser', 'wetback', 'lazy Mexican', 'mother fucker', as well as other racial slurs such as jig, koon, an nigger. Angela was also verbally abusive to another Mexican National employee named "Nemo". Two days before my termination, Nemo's bus had been broken into, and he was told to use Angela's. When Angela found out about it, she starting cussing and calling Nemo names, threatening that she would have Nemo deported. She also called Carlton Wood, Project Manager, Keith Denham, Shane Green and Berry Brothers and demanded that "before she got this bus back from this greaser, she wanted it fueled, cleaned and washed. She, as well as others, created a hostile, intimidating work environment, continuing to harass me and other Hispanic employees

Additionally, I believe I received different terms and conditions of employment because overtime was not awarded equitably. Overtime was given with favorable application towards white and/or female employees.

*Since my termination, I have been deemed ineligible for rehire by Bay, Ltd. and believe I have experienced unfavorable references in my search for other employment. Approximately one month after my termination, I reapplied to Bay Ltd. I spoke with someone in personnel, and inquired if they had a position in HMC available. She indicate that there was a vacancy, and then asked me if I had every worked for Bay Ltd. before. When I indicated yes, she ran a search in their computer system, and then told me that I was not eligible for rehire. When I asked the reason, she told me she could not discuss that with me; I would have to speak with a Mr. Sylva. She indicated that he was not there, but would return within a week. I did not pursue speaking with Mr. Sylva. Additionally, I applied with J Merit for a vacant position of boilermaker. When I submitted my application, they also did a computer search, and I was told that I was not eligible to apply for their position. There have been other companies which I have applied for vacant positions in which appoints were scheduled for interviews, and then the company would follow-up with a telephone call cancelling the interview without giving me any reason. I believe that in addition to unfavorable work references, comments are being made outside of the reference environment intended to hinder my employment opportunities with prospective employers by "black balling" me in my search for other employment. I was not informed at the time of my termination that I would be ineligible for rehire with Bay Ltd. I have been denied any future employee with Bay Ltd. as well as denied employment opportunities with other employers due to unfavorable references and/or interference and hindrance of my employment efforts.*

*I believe that there was a motive for my discharge by two people, Angela and Spencer. Both of these employees provided statements to management that I had made death threats. These statements can be seen as a pretext for my discharge because Angela wanted a white female hired to replace me, and Spencer rents housing to Angela and Rodeo. There is also a credibility issue with Spencer because he has a felony record.*

Page 3 of 4

I believe I continue to be discriminated against because of my sex (male) and National Origin (Hispanic) because I was replaced in my position of bus driver by a White, female applicant. *I also believe I was retaliated against for protesting a prohibited employment practice.*

Comparables

Jason (LNU) (Hispanic) – Was terminated from employment on or around September 25, 2007. I replaced him as bus driver. I believe Jason has filed an EEOC complaint.
Lolly (LNU) (Hispanic) – has been terminated at least twice; has filed EEOC complaints and been reinstated.
Nemo (Real Name Unknown) – is a driver for the company, but does not have appropriate credentials to be a bus driver.
Angela (LNU) (White) – was hired as bus driver after they removed me from that position is August.

Witnesses:

Keith Dynahm (white) – was present during the bus search at truck stop
Head Rigger for job project (name unknown) (Hispanic) - was present during the bus search at truck stop
Bay Ltd. Safety man (name unknown) (white) – was present during the bus search at the truck stop
Pato (LNU) – told me that I wouldn't last as bus driver because they wanted a white female in the position
Roger Salinas – Fitter – knows me and knows I'm not the type to carry such magazines or threaten people


Based upon the information given herein, I believe I have been discriminated against based upon National Origin (Hispanic), Sex (Male) *and Retaliation* in violation of Title VII of the Civil Rights Act of 1964, as amended and City of Corpus Christi Code of Ordinances – Chapter 24 Human Relations, as amended.

| DATE | SIGNATURE OF WITNESS | SIGNATURE OF EEOC REPRESENTATIVE | PAGE |
|---|---|---|---|
| Jan 24, 2008 | | | 4 OF 4 |

PRIVACY ACT STATEMENT:   (This form is covered by the Privacy Act of 1974, Public Law 93-579. Authority for requesting and uses of the personal data are given below.)

1. FORM NUMBER/TITLE/DATE:   EEOC FORM 133, EEOC AFFIDAVIT, December 1993.
2. AUTHORITY:  42 USC 2000e(9), 29 USC 201, 29 USC 621, 42 U.S.C. 12117.
3. PRINCIPAL PURPOSES:  Provides a standardized format for obtaining sworn statements of information relevant to a charge of discrimination.
4. ROUTINE USES:  The affidavits are used to:  (1) make an official determination regarding the validity of the charge of discrimination; (2) guide the Commission's investigatory activity; and (3) in Commission litigation, to impeach or substantiate a witness's testimony.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR PROVIDING INFORMATION: Voluntary: Failure to provide an affidavit has no effect upon jurisdiction of the Commission to process a charge. However, sworn statements submitted by the parties are, of course, relied upon more heavily than unsworn statements in making a determination as to the existence of unlawful discrimination.

REVERSE OF EEOC FORM 133 (10/94)

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Ramiro J. Meza<br>4530 Odem Dr.<br>Corpus Christi, TX 78415 | From: | San Antonio Field Office<br>5410 Fredericksburg Rd<br>Suite 200<br>San Antonio, TX 78229 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 36B-2008-00002 | Austin Jaycox,<br>Enforcement Supervisor | (210) 281-7650 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)     Pedro Esquivel, Director     2-25-2010 (Date Mailed)

cc:   **BAY LTD**<br>**1414 Corn Product Road**<br>**Corpus Christi, TX 78469**